**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ernestina Gamez,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Huffy Corporation Incorporated, et al.,<br><br>　　　　　Defendants. | No. CV-21-00414-TUC-JCH<br><br>**ORDER** |

In this case, Plaintiff seeks to hold Defendant Huffy[1] liable for the death of her father after a bicycle fork on a Huffy Trail Runner bicycle failed unexpectedly. Doc. 1-2 at 14. Huffy, in turn, seeks indemnity and contribution from the alleged manufacturer of the bicycle fork, Third-Party Defendant Tianjin Xuchen Bicycle Accessories Limited Company ("TXBA"). Doc. 24 at 3–5.

Before the Court is TXBA's motion to dismiss for lack of personal jurisdiction. Doc. 62. The motion is fully briefed, Docs. 76, 89, and the Court heard oral argument on January 5, 2024. Doc. 90. The Court will grant TXBA's motion because TXBA has no relationship to Arizona specifically, only an attenuated relationship to the United States generally. The Court will further deny Huffy's request for jurisdictional discovery because the request is vague and based on bare allegations in the face of specific denials.

///

---

[1] For convenience, the Court uses "Huffy" to mean both Defendants "Huffy Corporation International, Inc." and "Huffy Manufacturing Company d/b/a Huffy Bicycle Company."

## I. Legal Standards

### A. Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. Facing a Rule 12(b)(2) motion to dismiss, the nonmovant bears the burden of demonstrating that the court's exercise of jurisdiction is proper. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). The plaintiff "need only make a prima facie showing of jurisdictional facts" when the court's determination is based on written materials rather than an evidentiary hearing. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (quotation marks and citation omitted). That is, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

Uncontroverted allegations in the complaint must be taken as true. *Boschetto*, 539 F.3d at 1015. In addition, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Any conflict "between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Boschetto*, 539 F.3d at 1015 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

### B. Personal Jurisdiction

Federal courts generally follow state law in determining the bounds of personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1)(A). Here, "Arizona 'exerts personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995)); *see also* Ariz. R. Civ. P. 4.2(a). Given that, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 801.

Under the Fourteenth Amendment's due process clause, "a tribunal's authority depends on the defendant having such 'contacts' with the forum State that 'the maintenance

of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). This inquiry "has long focused on the nature and extent of 'the defendant's relationship to the forum state.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017)). That relationship may permit "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.*

General jurisdiction depends on the defendant's relationship with the forum state—for companies, the question is whether the defendant is incorporated, headquartered, or otherwise "at home" there. *Ford*, 141 S. Ct. at 1024.

By contrast, "specific jurisdiction covers defendants that are less intimately connected with a state, but that have sufficient minimum contacts with the state that are relevant to the lawsuit." *LNS Enters.*, 22 F.4th at 859 (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)). While general jurisdiction depends on the relationship between the defendant and the forum, specific jurisdiction depends on the relationship between "the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). The Ninth Circuit has "established a three-prong test for analyzing a claim of specific personal jurisdiction." *Schwarzenegger*, 374 F.3d at 802. In particular:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* (citation omitted).

///

## II.     Analysis

Huffy concedes that the Court lacks general personal jurisdiction here. The Court further determines it lacks specific personal jurisdiction because TXBA has no relationship with Arizona specifically, only an attenuated relationship with the United States generally. The Court further determines that jurisdictional discovery is not warranted because Huffy's request is speculative and does not rise above the level of a "hunch."

### A.  General Personal Jurisdiction

Huffy does not respond to TXBA's argument or dispute that the Court lacks general personal jurisdiction over TXBA. *Compare* Doc. 63 at 8–9, *with* Doc. 24. At oral argument, Huffy conceded the point. Doc. 90 at 10:19–23. The Court agrees it lacks general personal jurisdiction because TXBA "is a limited company with its principal place of business at Liang Tou Village East, Liang Tou Town, Jinghai County, Tianjin, China." Doc. 24 ¶ 2. TXBA "has no physical locations, facilities or personnel in Arizona, … is not licensed to conduct business in Arizona, owns no property or assets in Arizona, … neither owes nor pays taxes in Arizona[, and] [n]one of [TXBA]'s officers, directors, shareholders, or employees are domiciled in Arizona." Doc. 63 at 9. TXBA thus is not "at home" in Arizona.

### B.  Specific Personal Jurisdiction

Huffy's Third-Party Complaint alleges the Court has specific personal jurisdiction because TXBA "knowingly conducting business as a designer, manufacturer, supplier, assembler, marketer, seller, and/or distributor of component parts of bicycles to be sold in Arizona." Doc. 24 ¶ 3.

TXBA mostly controverts Huffy's allegation. *See* Doc. 63 at 3–5. TXBA asserts it is "not involved in the design, manufacture, assembly, distribution, or sale of [bicycles]." Doc. 63 at 3. Rather, TXBA only manufactures component bicycle parts and sells them to bicycle assemblers. Doc. 63 at 3. Assemblers, in turn, sell assembled bicycles to "brand owners and designers" like Huffy, which in turn sell them to retailers like Walmart. *Id.*

Huffy's Response and "Unsworn Declaration" do not substantially conflict with TXBA's account of its operation. *See generally* Docs. 76, 76-1. The Declaration is made

by the General Manager of "Tianjin Xufeng Sports Equipment Manufacture Co., Ltd. or Alliance Cycle Industry" ("Alliance"). Doc. 76-1 ¶ 1. Alliance "obtains bicycle parts and components [from … TXBA]." *Id.* ¶ 9. Alliance assembles these component bicycle parts and sells the assembled bicycles to, among others, Huffy. *Id.* ¶¶ 13–15.

Rather than dispute the scope or character of TXBA's operation, Huffy emphasizes evidence that TXBA knew its products were destined for the United States. *See generally* Doc. 76 at 3–4, 11; Doc. 90 at 11:6–24. In Huffy's Declaration, Alliance's General Manager states that (1) Alliance representatives told TXBA that Huffy distributed and sold bicycles using TXBA's bicycle forks in the United States; (2) Huffy representatives visited TXBA and discussed with TXBA the design, manufacture, assembly, distribution, and sale of bicycles using TXBA's bicycle forks in the United States; and (3) TXBA placed no limitations on where bicycles using TXBA's bicycle forks could be sold. *See* Doc. 76-1 ¶¶ 18–29. Huffy's Response also argues that TXBA itself acknowledges it "manufactured and distributed its bicycle forks for a world-wide market." Doc. 76 at 11. TXBA's affidavit states in part that TXBA manufactures bicycle components for Asia-based assemblers "who are selected by bicycle brand owners and designers such as Huffy." Doc. 63 at 18 ¶ 8. TXBA's affidavit also states that TXBA has no "knowledge of or control over where the bicycles with [TXBA's] manufactured component parts are shipped within the United States[.]" Doc. 63 at 19 ¶ 12.

The question, then, is whether TXBA's operation as a manufacturer of component bicycle parts—combined with knowledge that the parts were bound for the United States— amounts to "purposeful availment of the privilege of doing business in [Arizona,] … purposeful direction of activities at [Arizona,] or … some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

### i. Resolving all conflicts in Huffy's favor, TXBA neither purposefully directed products at Arizona, nor purposefully availed itself of Arizona's laws.

Under either standard, the Court lacks jurisdiction over TXBA because TXBA has no relationship to Arizona specifically. At most, Huffy's evidence suggests an attenuated

relationship between TXBA and the United States generally. "Without more," the Court cannot conclude that TXBA purposefully directed products to Arizona, or purposefully availed itself of the privilege of Arizona's laws.

TXBA argues that its contacts with Arizona or any individual state are insufficient to confer specific personal jurisdiction because TXBA does nothing more than place its bicycle forks into the stream of commerce. *See* Doc. 63 at 3–9 (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102 (1987); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir. 2007) (adopting J. O'Connor *Asahi* concurrence)). Huffy responds that *J. McIntyre* and *Asahi* were plurality decisions and do not control the outcome here. *See* Doc. 76 at 6–12 (citing *Hedrick v. Daiko Shoji Co.*, 715 F.2d 1355 (9th Cir. 1983) (overruling recognized in *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995)); *A. Uberti*, 892 P.2d 1354 (Ariz. 1995); *Gray v. Am. Radiator & Standard Sanitary Corp.*, 176 N.E.2d 761 (Ill. 1961)); Doc. 90 at 7:7–25. Huffy is mistaken.

The Ninth Circuit has adopted the "stream of commerce plus" test articulated in Justice O'Connor's *Asahi* concurrence. *Holland Am. Line*, 485 F.3d at 459. There, Justice O'Connor wrote:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State …. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi*, 480 U.S. at 112. As for what constitutes "something more," the Ninth Circuit typically examines the examples provided by *Asahi*, which included "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *See LNS Enters.*, 22 F.4th at 861 (quoting *Asahi*, 480 U.S. at 112).

The Ninth Circuit also draws from *J. McIntyre*, which sought to clarify *Asahi* and which "revers[ed] [a] … New Jersey[] decision that 'concluded that a British manufacturer of scrap metal machines was subject to jurisdiction in New Jersey, even though at no time had [the manufacturer] advertised in, sent goods to, or in any relevant sense targeted [New Jersey].'" *LNS Enters.*, 22 F.4th at 862 (quoting *J. McIntyre*, 564 U.S. at 877); *see also, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) ("We believe that the Supreme Court's recent decision in *J. McIntyre* … is consistent with the line of [Ninth Circuit] cases finding specific jurisdiction when there has been purposeful direction."); *Ariz. Sch. Risk Retention Tr., Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 939 (D. Ariz. 2016) ("[T]he Court, as many other courts have done, views the holding of the fragmented *J. McIntyre* decision to be that of the narrow ground set forth in Justice Breyer's concurrence in the judgment. … [V]iewed from Justice Breyer's p[er]spective, … a stream of commerce approach … that imposes personal jurisdiction on no more than the defendant's use of a national distributor … must be rejected.") (citations omitted).

Looking to these precedents, the Court determines that TXBA did not "purposefully direct [its] activities or consummate some transaction with [Arizona,] or perform some act by which [TXBA] purposefully avail[ed] [itself] of the privilege of conducting activities in [Arizona.]" *See Schwarzenegger*, 374 F.3d at 802. In cases like this, involving products liability and negligence, the Ninth Circuit often analyzes "purposeful direction" rather than "purposeful availment." *Id.* at 802 (distinguishing the two as "distinct concepts," where "purposeful availment" is analyzed most often in contract disputes, such as where a defendant executed or performed a contract in the forum State). But the distinction is not "a hard-and-fast rule." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023). The first prong of the *Schwarzenegger* test "may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof." *Id.* (citing *Yahoo! Inc.*, 433 F.3d at 1206) (internal quotation marks omitted). The result here is the same either way. *Accord Davis*, 71 F.4th at 1162 (analyzing both).

///

### ii. TXBA did not "purposefully direct" its products to Arizona primarily because TXBA has no control over its products after selling them to third parties like Alliance.

Purposeful direction is established where the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

The second prong—express aiming—is not established here even assuming the first and third prongs were. Under the express aiming prong, courts assess a defendant's connection to the forum state. *See Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). The inquiry centers on whether the defendant specifically targeted the forum state. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) (citing *Walden*, 571 U.S. at 284). A defendant does not expressly aim its activities at the forum state when the unilateral activity of a third party is the defendant's only connection to the forum state. *See Walden*, 571 U.S. at 284–85 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92). Rather, the focus is on the defendant's "own contacts," i.e., "contacts that the defendant himself creates with the forum state." *See id.*; *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017).

Here, TXBA has no contact with Arizona specifically. Huffy does not even allege that TXBA (1) designed its bicycle forks for the Arizona market, (2) advertised in Arizona, (3) established channels for providing regular advice to customers in Arizona, or (4) marketing its bicycle forks through a distributor who agreed to serve as an Arizona sales agent. *See generally Asahi*, 480 U.S. at 112 (providing these as examples of what could constitute "something more" than merely placing products in the stream of commerce). Instead, TXBA relinquished control over its products after selling them to third parties like Alliance. Huffy does not dispute that or any other aspect of TXBA's lengthy

list of what it does not do.[2] *Compare* Doc. 63 at 19–20, *with* Doc. 76 at 2–4; Doc. 90 at 2:18–4:11. Thus, although TXBA may have targeted the United States generally, it did not target Arizona specifically. At oral argument, Huffy essentially conceded that exact point. Doc. 90 at 10:11–18. That means TXBA did not "expressly aim" its products at Arizona.

### iii. TXBA did not "purposefully avail" itself of Arizona's laws because it has no relationship to Arizona specifically, only an attenuated relationship to the United States generally.

The result is the same under a purposeful availment test. A defendant purposefully avails itself of the forum's benefits if it has intentionally "engaged in significant activities within a State or has created 'continuing obligations' between [itself] and the residents of the forum." *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990) (citation omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). The defendant "must show that the [third-party] defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Ford*, 141 S. Ct. at 1025 (citing *Walden*, 571 U.S. at 285 (second alteration in original)).

Here, TXBA did not purposefully avail itself of Arizona's benefits because it has

---

[2] TXBA (1) has no relationship with any U.S. bicycle retailer; (2) is not a resident of Arizona; (3) has not maintained a registered agent in Arizona or conducted business in Arizona; (4) has not ever submitted to Arizona's jurisdiction; (5) has never maintained an office, warehouse, facility, or any place of business in Arizona; (6) has never owned or leased any property in Arizona; (7) has never solicited business or advertised in Arizona; (8) has never had an ownership interest in any business based in or conducting business in Arizona; (9) has never had any distribution or sales agreements with any individual or corporation based in Arizona; (10) has never sent any of its agents to Arizona to solicit or conduct business; (11) has never designed a product specifically for Arizona; (12) has never provided advice to Arizona consumers; (13) has never contracted with any Arizona resident; (14) has never shipped any of its products to Arizona; (15) has never maintained a website for direct sales to Arizona; (16) does not sell its products through any third-party marketplace; (17) does not accept service or warranty requests by any person or business in Arizona; (18) does not perform service or warranty work in Arizona; (19) has never had a channel for providing advice to Arizona product users or buyers; (20) has never held a board meeting or any other official meeting in Arizona; (21) has never had an agent attend any product or training seminar "or other gatherings" in Arizona; (22) has never attended a conference in Arizona. Doc. 63 at 19–20.

engaged in no activities in Arizona and has created no continuing obligations with Arizona residents. TXBA works only with bicycle assemblers in Asia. Resolving any evidentiary conflicts in Huffy's favor, TXBA knew its products were destined for the United States because Alliance and Huffy told them so. But that is no more than placing products in the stream of commerce. Even if TXBA knows that its products are destined for the United States, more is required for TXBA to avail itself of the benefits of Arizona's laws specifically, creating a reciprocal obligation to submit to Arizona's sovereignty. *Cf. Ford*, 141 S. Ct. at 1025 (reciprocal obligations created where Ford "conduct[s] so much business in [the forum states]" and "enjoys the benefits and protection of [their] law—the enforcement of contracts, the defense of property, the resulting formation of effective markets"). Indeed,

> Assuming, *arguendo*, that [Huffy has] established [TXBA]'s awareness that some of the [bicycle forks] sold to [Alliance] would be incorporated into [bicycles] sold in [Arizona], [Huffy has] not demonstrated any action by [TXBA] to purposefully avail itself of the [Arizona] market. [TBXA] does not do business in [Arizona]. It has no office, agents, employees, or property in [Arizona]. It does not advertise or otherwise solicit business in [Arizona]. It did not create, control, or employ the distribution system that brought its [bicycle forks] to [Arizona]. There is no evidence that [TXBA] designed its product in anticipation of sales in [Arizona].

*See Asahi*, 480 U.S. at 112–13 (citation omitted); *see also, e.g.*, *J. McIntyre*, 564 U.S. at 882 ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."); *Asahi*, 480 U.S. at 112 ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."); *Walsh v. LG Chem Ltd.*, 834 F. App'x 310, 312 (9th Cir. 2020) ("[The defendant's] high volume of sales in the United States … is insufficient to support personal jurisdiction absent additional conduct specifically directed at the forum state. This is particularly true where, as here, [the plaintiff] only identifies actions directed at the entire United States market, rather than the

relevant forum, i.e., Arizona.") (citation omitted).

Thus, even if TXBA availed itself of the privilege of conducting business in the United States generally, it has not purposefully availed itself of the privilege of conducting business in Arizona specifically. "Without more," the Court has no basis to assert specific personal jurisdiction over TXBA and must grant TXBA's motion to dismiss.

      **iv.  Huffy's arguments to the contrary are unpersuasive.**

Huffy's arguments rest on inapposite cases, and reasoning rejected by the Supreme Court and Ninth Circuit. For example, Huffy cites *Ford*, 141 S. Ct. at 1017. Doc. 76 at 12–13. But unlike TXBA in this case, the defendant in *Ford* did "substantial business" in both relevant states forums and conceded that it had purposefully availed itself of them. 141 S. Ct. at 1022. Huffy also cites *Hedrick*, 715 F.2d at 1357. Doc. 76 at 6–8. But "*Hedrick* has been impliedly (if not explicitly) overruled [by O'Connor's *Asahi* concurrence]." *Thomas v. Amer Sports Co.*, No. 4:20-CV-00565-DCN, 2022 WL 1063721, at *5 (D. Idaho Apr. 8, 2022) (citing, among others, *Omeluk*, 52 F.3d at 271 ("*Hedrick* is expressly disapproved in [Justice O'Connor's] *Asahi* [concurrence] so if that portion of *Asahi* is the law, then *Hedrick* is no longer the law of this circuit.")).

Huffy also relies heavily on reasoning rejected by the Supreme Court and the Ninth Circuit. For example, Huffy cites *A. Uberti*, 892 P.2d at 1354. Doc. 76 at 8–11. There, the defendant "knowingly and intentionally manufactured its products for the United States." *A. Uberti*, 892 P.2d at 1360. The defendant "chose a distributor intending to penetrate the American market." *Id.* at 1361. And the defendant "knew its products, passing through its American distributor, … would flow into local markets across America." *Id.* at 1360. Applying Justice O'Connor's *Asahi* concurrence, the Arizona Supreme Court held that the defendant's intent to enter the United States market through a United States distributor was the requisite "plus" factor permitting Arizona to exercise specific personal jurisdiction. *See id.* at 1362. The same reasoning persuaded the New Jersey Supreme Court in *J. McIntyre*:
> It would be strange indeed if a New Jersey manufacturer that makes a defective and dangerous product and is both subject to the jurisdiction of our courts and accountable under our product-liability laws would be able to

> move its plant to a foreign land and peddle its wares through an independent distributor across the nation, with some purchased by New Jersey consumers, and suddenly become beyond the reach of one of our injured citizens through this State's legal system.

*Nicastro v. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 591 (N.J. 2010), *rev'd by J. McIntyre*, 564 U.S. at 873. And the same reasoning animated Justice Ginsburg's dissent from *J. McIntyre*'s reversal of the New Jersey Supreme Court. *See generally J. McIntyre*, 564 U.S. at 893–914 (J. Ginsburg, dissenting). Justice Ginsburg observed:

> Courts, both state and federal, confronting facts similar to those here, have rightly rejected the conclusion that a manufacturer selling its products across the USA may evade jurisdiction in any and all States, including the State where its defective product is distributed and causes injury. They have held, instead, that it would undermine principles of fundamental fairness to insulate the foreign manufacturer from accountability in court at the place within the United States where the manufacturer's products caused injury.

*Id.* at 906 (citing, among others, *A. Uberti*, 892 P.2d at 1362). Justice Ginsburg distinguished *Asahi* as "not a close call," *id.* at 907, involving "a component-part manufacturer with 'little control over the final destination of its products once they were delivered into the stream of commerce.'" *Id.* at 908 (quoting *A. Uberti*, 892 P.2d at 1361 (distinguishing its facts on similar grounds)).

First, this case is different from *J. McIntyre* and *A. Uberti* because TXBA has no control over its products once they are delivered into the stream of commerce. This case is more similar to *Asahi* because TXBA is a component-part manufacturer with no control over the final destination of its bicycle forks once they are delivered to bicycle assemblers.

Second, and more importantly, the Supreme Court and Ninth Circuit have considered and rejected the arguments Huffy attempts to revive. "[A] rule based on general notions of fairness and foreseeability[] is inconsistent with the premises of lawful judicial power [because] it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *J. McIntyre*, 564 U.S. at 883; *accord Asahi*, 480 U.S. at 111–12 (rejecting the approach of "those courts that have held that mere foreseeability or awareness was a constitutionally sufficient basis for personal jurisdiction"); *Axiom*

*Foods*, 874 F.3d at 1070 ("The foreseeability of injury in a forum is not a sufficient benchmark for exercising personal jurisdiction.") (citation omitted). Huffy's arguments are not outlandish. They simply have not carried the day. Huffy conceded as much when it could not provide a case decided after 2010 to support its arguments. *See* Doc. 90 at 26:2–21. Thus, Huffy cannot rely on them to assure this Court of its jurisdiction over TXBA.

### C. Jurisdictional Discovery

In the alternative, Huffy requests jurisdictional discovery to "address TXBA's, Huffy's, and other entities' plans, operations, knowledge, understandings, participation, and other involvement in the manufacturing, distribution, and sales processes related to the bicycle forks and the United States market." Doc. 76 at 14.

A court may permit jurisdictional discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). A court may grant jurisdictional discovery if the request is based on more than a "hunch that it might yield jurisdictionally relevant facts." *See Boschetto*, 539 F.3d at 1020. But the Court need not permit even limited discovery where the claim of jurisdiction "appears to be both attenuated and based on bare allegations in the face of specific denials[.]" *Pebble Beach*, 453 F.3d at 1160 (citation omitted). It is not an abuse of discretion to deny jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

Jurisdictional discovery is unwarranted here because Huffy's request is vague and speculative despite TXBA's specific rebuttals and denials. Huffy provides no evidence substantiating its request for discovery or describe with any precision how discovery would be helpful. In fact, by alleging the need for discovery to address TXBA's relationship to "the United States market," Huffy repeats the flawed premise of its arguments against personal jurisdiction. *See also, e.g.*, Doc. 90 at 14:1–6. Huffy has not disputed any of TXBA's assertions about its relationship to Arizona specifically, and its discovery request

is not aimed at Arizona, either. As discussed above, discovery related to the United States generally would be futile. Even if Huffy meant to discover facts relating to Arizona specifically, its speculative request does not rise above the level of a "hunch." Thus, the Court will exercise its discretion and deny Huffy's request for jurisdictional discovery.

### III. Order

Accordingly,

**IT IS ORDERED GRANTING** Third-Party Defendant's Motion to Dismiss (Doc. 62).

**IT IS FURTHER ORDERED DISMISSING WITHOUT PREJUDICE** Defendants' Third-Party Complaint (Doc. 24). Third-Party Defendant Tianjin Xuchen Bicycle Accessories Limited Company is dismissed from this action, which will continue as to the remaining Defendants. The Clerk of the Court shall enter judgment accordingly.

Dated this 8th day of January, 2024.

John C. Hinderaker
United States District Judge